AF Approval *ILK for SCN*    Chief Approval *DMB*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.    CASE NO. 8:24-cr-18-WFJ-NHA

PEDRO JESUS SUAREZ-AGUILAR

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Pedro Jesus Suarez-Aguilar, and the attorney for the defendant, Douglas Stamm, mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846.

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of five years and a maximum term of 40 years imprisonment, a fine of

Defendant's Initials _PS_

up to $5,000,000, a term of supervised release of at least four years up to life, and a special assessment of $100.

   3.    *Alleyne v. United States* and *Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a minimum sentence of five years of imprisonment, and a maximum term of 40 years imprisonment, may be imposed because the following facts have been admitted by the defendant and are established by this plea of guilty:

The weight of the substance that the defendant conspired to distribute and possess with intent to distribute was 500 or more grams of cocaine.

   4.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| First: | That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a shared and unlawful plan, as charged in the Indictment; |
| Second: | That the defendant, knowing the unlawful purpose of the plan, willfully joined in it; and |
| Third: | That the object of the unlawful plan was to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine. |

Defendant's Initials

5. <u>Count Dismissed</u>

At the time of sentencing, the remaining counts against the defendant, Counts Two through Nine, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _PS_

3

8.   Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Cooperation—Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution

Defendant's Initials _J.S_

4

for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _J̲S̲_

5

10.  Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11.  Cooperation—Responsibilities of Parties

a.  The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.  It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _P̲S̲_

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this

Defendant's Initials _P̠S̠_

7

agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the

Defendant's Initials _P̶S̶._

8

forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will

Defendant's Initials _PS_

9

not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials _PS_

10

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture, is collected in full.

**B.    Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _JS_

11

2. <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _P S_

12

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials _P S_

by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _P S._

14

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _P S._

15

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit and stipulate that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _P. S._

16

<u>FACTS</u>

In or about April 2022, DEA Tampa's Enforcement Group 2 (EG2) initiated an investigation into a cocaine trafficking cell in Hillsborough County. Using information from a Hillsborough County Sheriff's Office (HCSO) detective working in an undercover capacity (the "UC"), investigators identified Pedro Jesus SUAREZ-Aguilar as a seller of cocaine.

During the course of the investigation, which began in 2022 and continued into 2023, the UC was able to make contact with SUAREZ-Aguilar by telephone and in-person and made several purchases of cocaine from SUAREZ-Aguilar, beginning with a purchase on March 15, 2022, of approximately 42.8 grams of cocaine for $1800. Numerous telephonic communications were recorded and placed into evidence regarding the cocaine purchases.

The UC also purchased approximately 43.9 grams and 15.3 grams of cocaine from SUAREZ-Aguilar for $1800 and $600 (in back-to-back purchases) on April 26, 2022.

A typical purchase proceeded as follows: on May 4, 2022, EG2 and HCSO coordinated a planned meeting between the UC and SUAREZ-Aguilar. At 3:30 p.m., surveillance was established on SUAREZ-Aguilar prior to meeting with the UC, while SUAREZ-Aguilar was at a local supermarket. At 4:23 p.m., officers observed SUAREZ-Aguilar depart from the supermarket and drive directly to his residence located at XXX XXX XXX XX, Tampa, Florida 33619.

Defendant's Initials

17

At 5:04 p.m., officers watched the UC, who was driving an undercover vehicle, arrive at SUAREZ-Aguilar's residence and engage in conversation with SUAREZ-Aguilar in front of his residence. At approximately 5:07 p.m. surveillance officers observed SUAREZ-Aguilar standing in front of his residence using his cellphone. SUAREZ-Aguilar met with the UC and told the UC to go into the residence while SUAREZ-Aguilar waited outside. Moments later, surveillance officers observed a white Hyundai arrive at SUAREZ-Aguilar's residence. SUAREZ-Aguilar walked to the passenger's side of the Hyundai and engaged in conversation with the driver. SUAREZ-Aguilar then walked away from the Hyundai to meet with the UC who had waited inside the residence. SUAREZ-Aguilar met with the UC inside the residence and SUAREZ-Aguilar sold the UC approximately two ounces of cocaine for $2,400 in cash. SUAREZ-Aguilar then walked out of the residence and delivered the money to the man in the Hyundai before returning to the residence and continuing to converse with the UC. This meeting was audio and video-recorded for evidentiary purposes. The following is part of the conversation between the UC and SUAREZ-Aguilar:

- SUAREZ-Aguilar: Those are the people that you call.

- UC: Yes, and they come.

- SUAREZ-Aguilar: That one is not of his word.

The conversation continued about SUAREZ-Aguilar's health and other topics until the following conversation occurred:

Defendant's Initials _P.S._

18

- UC: This is my side job. You understand? But I always have people that are looking, are looking. Like how much do you think for five or six?

- SUAREZ-Aguilar: Easy.

- UC: Oh, easy, ok ok.

- SUAREZ-Aguilar: I have the people.

- UC: If I buy, if I get the money... (UC coughs) I'm gonna make you sick, I'm telling you. If I get the money, and, and get like five or six.

- SUAREZ-Aguilar: No, I will get the best price.

- UC: The best price is what I'm talking about.

- SUAREZ-Aguilar: Best price.

Several additional purchases proceeded in similar fashion. Each of the seizures of cocaine resulted from a purchase negotiated between the UC, with other law enforcement officers present conducting surveillance and witnessing events. There are audio recordings for each purchase and several video-recordings. Law enforcement officers developed leads on several sources of supply during the transactions, and suspects were identified.

A summary of all the purchases, including the three already mentioned above is:

- March 15, 2022 (Count Two)—UC purchased approximately 42.8 grams of cocaine from SUAREZ-Aguilar for $1800;

- April 26, 2022 (Count Three)—UC purchased approximately 43.9 and 15.3 grams of cocaine from SUAREZ-Aguilar for $1800 and $600 (back-to-back purchases);

Defendant's Initials _P S_

• May 4, 2022 (Count Four)—UC purchased approximately 57 grams of cocaine from SUAREZ-Aguilar for $2400;

• June 16, 2022 (Count Five)—UC purchased approximately 146 grams of cocaine from SUAREZ-Aguilar for $5500;

• June 30, 2022 (Count Six)—UC purchased approximately 139.1 grams of cocaine from SUAREZ-Aguilar for $5500;

• August 3, 2022 (Count Seven)—UC purchased approximately 141.5 grams of cocaine from SUAREZ-Aguilar for $5500;

• May 17, 2023 (Count Eight)—UC purchased approximately 129 grams of cocaine from SUAREZ-Aguilar for $4400;

• August 2, 2023 (Count Nine, described below)—UC negotiated purchase of a kilogram of cocaine with SUAREZ-Aguilar, and a buy/bust operation yielded approximately 1167 grams of cocaine from SUAREZ-Aguilar.

Regarding the buy/bust operation on August 2, 2023, between May 18, 2023, and August 2, 2023, the UC was in telephone contact with SUAREZ-Aguilar and negotiated to buy a kilogram of cocaine from SUAREZ-Aguilar. On June 14, 2023, the UC met with SUAREZ-Aguilar to buy the kilogram of cocaine, but his source of supply ("SOS") conducted counter-surveillance (looking for law enforcement vehicles and investigators) and suspected there were undercover vehicles in the area. The SOS communicated with SUAREZ-Aguilar and, according to SUAREZ-Aguilar, the SOS identified undercover law enforcement in the area and canceled the transaction at that time.

Between July 26, 2023, and August 2, 2023, SUAREZ-Aguilar and the UC exchanged several calls in which SUAREZ-Aguilar agreed to sell the UC a kilogram

Defendant's Initials _P S_

20

of cocaine. On August 1, 2023, SUAREZ-Aguilar and the UC planned to meet so SUAREZ-Aguilar could sell the kilogram of cocaine to the UC, but according to SUAREZ-Aguilar, his SOS was taking his time delivering the kilogram to SUAREZ-Aguilar, so the meeting on August 1, 2023, did not occur.

On August 2, 2023, however, the UC and SUAREZ-Aguilar exchanged the following calls:

- 11:05 a.m., 08/02/23: The UC called SUAREZ-Aguilar and asked what happened the day before. SUAREZ-Aguilar told the UC that the SOS was taking his time. The UC then asked SUAREZ-Aguilar if he (SUAREZ-Aguilar) wanted to do it that day, and SUAREZ-Aguilar said yes. The UC told SUAREZ-Aguilar they could do it (conduct the narcotic transaction for the kilogram of cocaine) in the afternoon, and the UC would give SUAREZ-Aguilar plenty of time. SUAREZ-Aguilar said he would call the SOS.

- 11:07 a.m., 08/02/23: SUAREZ-Aguilar called the UC and said they could meet whenever the UC wanted. The UC told SUAREZ-Aguilar he would call him (SUAREZ-Aguilar) when the UC was close (to the previous meeting location).

- 1:58 p.m., 08/02/23: The UC called SUAREZ-Aguilar and SUAREZ-Aguilar asked the UC when they were going to meet. The UC told SUAREZ-Aguilar around 3:00 p.m. at the trailer park.

- 1:59 p.m., 08/02/23: The UC called SUAREZ-Aguilar and asked him if he was with the SOS, and SUAREZ-Aguilar told the UC he had to call the SOS.

- 2:14 p.m., 08/02/23: The UC called SUAREZ-Aguilar and asked him what the SOS said (regarding the delivery of the kilogram of cocaine to SUAREZ-Aguilar). SUAREZ-Aguilar said "yes," and the UC told SUAREZ-Aguilar they would meet at three.

Surveillance officers then watched the UC drive to the meeting location (XXX River Bay Drive) and park. At 3:10 p.m., separate surveillance units observed

Defendant's Initials _P S_

SUAREZ-Aguilar talking on a cellphone in front of a daycare center near the afore-mentioned supermarket. SUAREZ-Aguilar was then seen walking southbound, empty-handed towards a green Ford Excursion (Florida Tag XXX I66), which SUAREZ-Aguilar then entered.

- 3:13 p.m., 08/02/23: SUAREZ-Aguilar called the UC and asked if he was parked. The UC told SUAREZ-Aguilar he was parked, and SUAREZ-Aguilar told the UC he would park there presently.

Surveillance units followed the Excursion SUAREZ-Aguilar had entered as it drove directly to the predetermined meeting location with the UC and SUAREZ-Aguilar. At 3:16 p.m., the UC watched a green Ford Excursion park next to the UC's vehicle. SUAREZ-Aguilar then exited the rear left passenger seat of the Excursion and entered the undercover vehicle. The UC noted that SUAREZ-Aguilar was holding a cloth bag. SUAREZ-Aguilar removed a box from the cloth bag, and within the box, there was a plastic grocery bag. The plastic bag contained what appeared to be a kilogram of cocaine. The following is part of the conversation between the UC and SUAREZ-Aguilar after SUAREZ-Aguilar entered the UC's vehicle.

- UC: Who are those people?

- SUAREZ-Aguilar: Those are my cousins.

- UC: The what?

- SUAREZ-Aguilar: The cousins.

- UC: Your cousins?

Defendant's Initials _A. S._

22

- SUAREZ-Aguilar: Yes.

- UC: Ok, they know what is going on?

- SUAREZ-Aguilar: No, he knows everything. He was the one who picked it up.

- UC: That's his?

- SUAREZ-Aguilar: Yes.

- UC: Okay.

- SUAREZ-Aguilar: Yes, those are my cousins, both. There you have the whole kilo.

SUAREZ-Aguilar removed the kilogram from the bag and box and handed the "whole kilo" to the UC.

At that time, the UC gave a signal to law enforcement officers, who then approached and took SUAREZ-Aguilar and both subjects in the Excursion into custody. This narcotics transaction was audio/video-recorded. The calls between the UC and SUAREZ-Aguilar were also recorded.

The UC moved to a neutral location and conducted a field test of the suspected cocaine, and the result was positive for the presence of cocaine. The weight was approximately 1167.0 grams of cocaine.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

Defendant's Initials _P S._

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____1_____ day of _____July_____, 2024.

ROGER B. HANDBERG
United States Attorney

_____
Pedro Jesus Suarez Aguilar
Defendant

_____
Douglas Stamm, Esquire
Attorney for Defendant

_____
E. Jackson Boggs Jr.
Assistant United States Attorney

_____
Daniel Baeza
Assistant United States Attorney
Chief, Transnational Organized Crime